UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TRACY RANSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-105-SNLJ |
| ) | |
| SECURITAS SECURITY SERVICES ) | |
| USA, INC. and TIMOTHY COLEY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Currently before this Court is defendant Securitas Security Services USA, Inc.'s ("Securitas") motion to compel arbitration and dismiss (#7) and plaintiff's motion to remand to state court (#15). For the reasons set forth below, the Court **GRANTS** Securitas's motion to compel arbitration and dismiss and **DENIES** plaintiff's motion to remand.

### I. BACKGROUND

Plaintiff has filed a complaint under the Missouri Human rights Act ("MHRA") alleging wrongful discharge, racial discrimination, and retaliation against his employer, Securitas. Plaintiff first began working for Securitas in June 2016. Also named as a defendant is Timothy Coley ("Coley"), a coworker who plaintiff asserts threatened him with a knife on or about August 16, 2016—allegedly because of plaintiff's race. (#1-2, p. 2, 7). Plaintiff alleges he immediately notified his superiors about his run-in with Coley, which went unaddressed and eventually led to his discharge several months later. In the

1

interim, Plaintiff alleges he was treated differently than other employees—in part because of the Coley run-in and in part because of his race generally—such as being "undermined" as a "night-time supervisor" and not being given the same privileges as other supervisors. (#1-2, p. 3-4).

On October 26, 2016, plaintiff was allegedly suspended from work because "people were afraid to work with him and were fearful because he kept mentioning the knife incident." (#1-2, p. 5). Two days later, on October 28, 2016, plaintiff was told he would be required to transfer to a position either in Fruitland, Missouri, or Poplar Bluff, Missouri. Plaintiff could not take either of these jobs because of "transportation issues." (#1-2, p. 5). Plaintiff was apparently discharged sometime thereafter, which Plaintiff asserts was motivated by race and constituted a retaliatory act by Securitas based upon plaintiff's vocal complaints regarding the Coley incident.[1]

## II. ANALYSIS

The parties raise two independent issues.

First, plaintiff seeks a remand to state court arguing Coley is a non-diverse party. Plaintiff is a Missouri citizen, as is Coley. Securitas is a Delaware corporation with its principal place of business in New Jersey. Thus, Plaintiff argues Coley's presence as a defendant defeats diversity jurisdiction. To counter this, Securitas invokes the fraudulent joinder doctrine, asserting Coley was added as a defendant merely to defeat diversity.

Second, Securitas seeks to compel arbitration. As part of its motion, Securitas attached an arbitration agreement signed by the parties (excluding Coley) who agreed to

---

[1] From his complaint, it is not clear when, specifically, plaintiff was discharged. However, payroll records suggest plaintiff's employment with Securitas ended in the middle of November, 2016. (#1-3, p.5).

submit "any disputes arising out of or related to [plaintiff]'s employment with Securitas" to arbitration. (#8-1, p. 6-12). Plaintiff invokes a variety of contract-base defenses under state law—including lack of consideration, lack of mutual obligations, and unconscionability—in arguing he should not be bound to the arbitration agreement.

Both issues are addressed in turn.

**A. Defendant Coley is not an "Employer" Under the 2016 Version of the MHRA and, Therefore, the Fraudulent Joinder Doctrine Applies**

The issue of whether or not remand is warranted requires this Court to determine whether Coley is a proper defendant. In answering that question, this Court must determine whether plaintiff has asserted viable claims against Coley under the MHRA.

The parties initially argue what version of the MHRA applies. Effective August 28, 2017, the MHRA was amended by the Missouri legislature to exclude individual liability. *See* § 213.010(8)(c) RSMo. (2017) ("'Employer' shall not include … an individual employed by an employer"). Prior to that amendment, the MHRA permitted individual liability, but only when the individual was "directly acting in the interest of an employer." *See* § 213.010(7) RSMo. (2016) ("'Employer' includes ... any person directly acting in the interest of an employer"). The factual circumstances surrounding plaintiff's claims occurred in 2016, well before the MHRA was amended to exclude individual liability. Despite this, Securitas argues "the definitional changes to the MHRA have retrospective application" because such changes are procedural in nature. (#25, p. 6). This Court disagrees. It has already been held by this Court that the changes to the MHRA are substantive in nature and, therefore, cannot be retroactively applied. *See Billingsley v.*

*Rich Logistics, LLC.,* 2018 WL 1924339 at *2 (E.D. Mo. Apr. 24, 2018) (Limbaugh, J.). Securitas provides no reason why this Court should reconsider its prior rulings.

Because it is the 2016 version of the MHRA that applies here, the Court must determine whether Coley fits under the definition of "employer" for the imposition of individual liability. Again, and adding the appropriate emphasis this time, the 2016 version of the MHRA broadly defines "employer" to include any individual who is "***directly acting*** in the ***interest of*** an employer." *See* §213.010(7) RSMo. (2016) (emphasis added). There has been some apparent disagreement in this Court—based seemingly on semantics—as to whether this language requires an individual to be acting in a supervisory capacity in order for liability to attach. *Compare Trickey v. Kaman Indus. Tech. Corp.*, 2009 WL 1974759 at *2 (E.D. Mo. Jul. 7, 2009) (Limbaugh, J.) (holding an individual can only be held liable under the MHRA if he or she was acting in a supervisory capacity); *with Sinclair v. Charter Communications, Inc.*, 2013 WL 5707872 at *6, n.7 (E.D. Mo. Oct. 21, 2013) (Perry, J.) (refusing to follow *Trickey* to the extent it did not comport with the finding that an individual, who was not plaintiff's supervisor but nonetheless held a supervisor-level position, could be held liable if said individual "directly oversaw" the offending action). However, in 2015, the Missouri Court of Appeals clarified the scope of Section 213.010(7) by first noting "we have found no Missouri cases applying the 'directly acting in the interest of' definition outside the context of a supervisory employee," and, thereafter, creating a three-part test to weigh the appropriate supervisory influence of an individual needed to impose individual liability. *Diaz v. Autozoners, LLC.*, 484 S.W.3d 64, 80 (Mo. App. W.D. 2015). This three-part test

4

requires a court to consider: (1) who was responsible for establishing policies and training employees concerning harassment; (2) who was responsible for receiving, investigating, and responding to harassment complaints; and (3) who had the power to discipline employees who may have failed to comply with anti-harassment policies. *Id*. (indicating an "employer" under Section 213.010(7) must have some "oversight or involvement in the discrimination"). All three factors invoke some indicia of direct supervisory influence. Thus, while a supervisory employee falls under the meaning of "employer," it has been observed that "no court has found an ordinary coworker to be an employer under the MHRA." *Jarrett v. Henkel Corp.*, 2016 WL 409819 at *2 (W.D. Mo. Feb. 2, 2016).

Here, plaintiff admits Coley was not his supervisor, stating "Coley pulled a knife on the Plaintiff *when he was a subordinate* of the Plaintiff. Then, he was promoted." (#16, p. 18 (emphasis added)).[2] There is no allegation Coley had any oversight or involvement of plaintiff's discharge (which encompasses plaintiff's retaliation claim as well, in that it is based on the act of discharging plaintiff) and the "racial discrimination" claim, to the extent it is based on the separate act of Coley allegedly brandishing a knife, certainly cannot be said to be an action taken in Coley's supervisory capacity or an action taken "directly … in the interest of" Securitas. In sum, plaintiff fails to set forth any allegations that would tend to meet the supervisory requirements of the three-part *Diaz* test. *See Diaz*, 484 S.W.3d at 80; *see also Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810

---

[2] Plaintiff summarily states "Coley acted as a supervisor to Plaintiff," but provides no factual support for this conclusion. (#16, p. 18; *see also* #1-2, p. 3). Conclusory statements are insufficient to defeat a finding of fraudulent joinder. *See Gardner v. J.C. Penney Corp., Inc*., 2005 WL 6267692 at *2 (E.D. Mo. May 2, 2005).

5

(8th Cir. 2003) (joinder is not fraudulent where there is "arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved"). As such, this Court finds Coley is not a "supervisor" directly acting in the interests of Securitas and, therefore, is not an "employer" as that term is understood under Section 213.010(7) of the MHRA. *See* § 213.010(7) RSMo. (2016).

Because Coley does not fit within the MHRA's definition of "employer," and thus because individual liability does not attach to him, this Court concludes that Coley was fraudulently added as a defendant in order to defeat diversity. *Filla*, 336 F.3d at 810 ("joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants"). Coley will be dismissed and, with the parties thus being diverse, plaintiff's motion to remand is denied.

**B. The Parties Have a Binding Agreement to Arbitrate.**

Before reaching the merits of plaintiff's contract-based arguments for avoiding arbitration, this Court notes plaintiff has demanded an "evidentiary hearing" under the Missouri Uniform Arbitration Act (MUAA) should a dispute arise "regarding the existence or validity of [the parties] purported agreement to arbitrate." (#23, p. 3). In essence, plaintiff seeks an evidentiary hearing should this Court decide to compel arbitration on grounds other than those raised by plaintiffs—lack of consideration, lack of mutuality, and unconscionability. The Court first notes it is the Federal Arbitration Act (FAA), under 9 U.S.C. § 4, and not the MUAA that applies here. *See Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 351 (Mo. 2006) (applying the MUAA, in a state court action, in determining what procedures to use to resolve a factual dispute between the

6

parties); *Nebraska Machinery Co. v. Cargotex Solutions, LLC*., 762 F.3d 737, 743 (8th Cir. 2014) (applying the FAA, in a federal court action, in determining what procedures to use to resolve a factual dispute between the parties). The FAA envisions the use of a jury trial or bench trial where there is a genuine factual dispute over the making of an arbitration agreement, not a summary evidentiary proceeding like those used under the MUAA. *See Kunzie v. Jack-in-the-Box, Inc*., 330 S.W.3d 476, 481 (Mo. App. E.D. 2010). But, even then, a jury trial or bench trial is only utilized when there exists a genuine issue of material fact as to the formation of an agreement to arbitrate—trial is not automatically granted to the requesting party. *See Nebraska Machinery Co*., 762 F.3d at 743 ("if the motions record reveals a material issue of fact, the FAA maintains that the court move summarily to trial"); *Schnabel v. Trilegiant Corp*., 697 F.3d 110, 118 (2nd Cir. 2012) (holding a jury trial under Section 4 of the FAA is only warranted when there "exists one or more genuine issues of material fact"); *Burch v. P.J. Cheese, Inc*., 861 F.3d 1338, 1346 (11th Cir. 2017) (accord).

The Court finds, here, that plaintiff is not entitled to a trial under Section 4 because there is no genuine issue of material fact as to "the *making* of the arbitration agreement." 9 U.S.C. § 4 (emphasis added). Indeed, plaintiff does not refute that he signed the parties' arbitration agreement—he states only that he does not remember signing it, and does not recall or understand what it says. Specifically, Plaintiff states that "he has no knowledge of signing such an agreement … So, despite [Plaintiff's] signature on the line, it is clear that he did not fully understand the agreement, or that its existence was not effectively communicated to him." (#23, p. 4). This is insufficient, under

7

Missouri law, to invalidate a contract. *Pinkerton v. Fahnestock*, 531 S.W.3d 36, 48 (Mo. 2017) ("Missouri courts apply the longstanding principle that a party's failure to read or understand the terms of a contract is not a defense to enforcement of those terms"); *see also Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (state law contract defenses may be considered under the FAA). Moreover, Securitas has stated by way of affidavit—unrefuted by plaintiff—that it requires, as a condition of employment, "all employees to agree to mutual arbitration of all disputes regarding the employment relationship." (#8-1, p. 2, 6). In addition, there are no allegations of fraud, duress, or coercion that might otherwise attack the formation of the parties' arbitration agreement. Simply put, this Court finds plaintiff has not raised a genuine dispute of fact that would merit a trial on the issue of contract formation under 9 U.S.C. § 4.

Finally, this Court considers plaintiff's three grounds for invalidating the parties' arbitration agreement—lack of consideration, lack of mutual obligations, and unconscionability. Plaintiff's unconscionability argument is easily resolved. He takes issue with the fact that the parties' promise to arbitrate appears illusory because Securitas specifically reserved the right to "modify, supplement, terminate or revise any of the provisions of this **Handbook**, other than the at-will requirement at any time." (#8-1, p. 12 (emphasis added)). If that clause related to the parties' agreement to arbitrate, such that Securitas could decide to unilaterally avoid arbitration, plaintiff may have a point; however, the bolded term—"handbook"—clearly refers to a different agreement: the "Employee Handbook," which plaintiff received on the same day that he signed the agreement to arbitrate. Indeed, it is clear from the record that the agreement to arbitrate

8

stood separate and apart from the clause above that plaintiff relies on. (#8-1, p 1-12). Plaintiff's unconscionability argument has no merit.

That leaves plaintiff's arguments of lack of consideration and lack of mutual obligations, which this Court views as synonymous under Missouri law. "Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 433 (Mo. 2015). Indeed, it has been said "in the absence of *other consideration*, mutuality of contract may suffice." *Wilder v. John Youngblood Motors, Inc.*, 534 S.W.3d 902, 909 (Mo. App. S.D. 2017) (emphasis added). That is to say, reciprocal promises may—themselves—be sufficient consideration, such as the mutual agreement to arbitrate, without needing additional consideration from either side; this is because such agreements necessarily requires both parties to mutually waive their right to suit. *See Strain v. Murphy Oil USA, Inc.*, 2016 WL 540810 at \*5 (W.D. Mo. Feb. 9, 2016) (parties' agreement to arbitrate, which contained mutual promises to arbitrate that applied equally to both parties, constituted sufficient consideration); *Credit Acceptance Corp. v. Niemeier*, 2015 WL 4207122 at \*3 (E.D. Mo. Jul. 10, 2015) (finding both parties give up something—"their right to come to court"—when agreeing to an equally applicable arbitration agreement, such agreement constituting "mutual consideration" in itself); *Humphries v. SSM Health Care Corp.*, 2017 WL 1246699 at \*2 (E.D. Mo. Apr. 5, 2017) (finding the mutual promise to resolve work-related disputes in consideration of both parties waiving their right to pursue claims in court acts as valid consideration in creating an enforceable bilateral contract).

The Court finds the parties' agreement to arbitrate imposes mutual obligations and, as such, finds there is sufficient consideration for the agreement. (#8-1, p. 3, 6-7); *see also Strain*, 2016 WL 540810 at *5; *Credit Acceptance Corp.*, 2015 WL 4207122 at *3; *Humphries*, 2017 WL 1246699 at *2. The bulk of plaintiff's argument is that the promise of at-will employment is insufficient consideration for an agreement to arbitrate. (#23, p. 7). And, to that point, plaintiff is correct. *See, e.g., Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 685 (Mo. App. E.D. 2015) (holding an employer's promise of new, future, or continued at-will employment does not create sufficient consideration for an employee's agreement to arbitrate). However, as this Court has already explained, Securitas did not promise at-will employment to plaintiff in exchange for plaintiff's agreement to arbitrate; rather, arbitration was a ***condition*** of at-will employment, and, in any event, both parties exchanged mutual promises to waive their right to suit as an independent matter. *Id*. at 688 (concluding that, because the employer was not equally bound to arbitrate its claims against the employee, but instead had discretion to avoid arbitration, the employer's "promise to arbitrate is devoid of mutuality of obligation"); *see also Houston v. NPC Int'l, Inc.,* 2014 WL 12779236 at *4 (W.D. Mo. Mar. 24, 2014) (opining that, under Missouri law, an employer conditioning an offer of at-will employment is qualitatively different than an employer's illusory promise of continued at-will employment); *Johnson v. C.H. Robinson Co., Inc.,* 2018 WL 3546468 at *2 (W.D. Mo. Jul. 18, 2018) (accord). Plaintiff's consideration and mutuality of obligation arguments are without merit.

"The [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Having found that the parties do not dispute that they have a signed agreement to arbitrate between them, this Court will direct the parties to proceed to arbitration.

## III. CONCLUSION

Having found that remand is inappropriate, and that the parties have a valid and binding agreement to arbitrate their disputes, the Court dismisses this case and directs the parties to proceed to arbitration.[3]

Accordingly,

**IT IS HEREBY ORDERED THAT**:

(1) Plaintiff's motion to remand (#15) is **DENIED**.

(2) Defendant Timothy Coley is **DISMISSED** as a party to this case.

(3) Defendant Securitas Security Services USA, Inc.'s motion to compel arbitration and dismiss (#7) is **GRANTED**.

(4) There being no remaining parties or claims, this case is **DISMISSED**.

---

[3] Generally, the FAA requires the Court to stay an action, rather than outright dismiss it. *See* 9 U.S.C. § 3 (stating the district court "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). However, the Eighth Circuit recognizes a "judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-770 (8th Cir. 2011). It appears here that the parties' agreement to arbitrate covers all of plaintiff's claims. (#8-1, p. 6 ("this agreement applies to any dispute arising out of or related to employee's employment with Securitas")). Accordingly, this Court finds no reason to stay this action and will, therefore, dismiss it in the exercise of its discretion.

So ordered this 25th day of September 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE